UNITED MOTOR CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12744. Promulgated June 21, 1928.

*Robert Ash, Esq.*, and *Thomas J. Reilly, Esq.*, for the petitioner. *Harold Allen, Esq.*, for the respondent.

MARQUETTE: This proceeding is for the redetermination of a deficiency in income and profits taxes asserted by the respondent for the year 1920 in the amount of $778.16. The only issue raised is whether the petitioner is entitled to include in its invested capital from and after July 1, 1920, the amount of $50,000 represented by promissory notes paid in for shares of the petitioner's capital stock.

#### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of Florida, and it is and was during the year 1920 engaged in business at Tampa. Its capital stock was, during the year 1920, owned and held by Manuel Moran, Ramon Moran, W. C. Moore, and John T. Moore, who also constituted the board of directors.

Some time prior to June 28, 1920, the petitioner, which was indebted to the Exchange National Bank of Tampa to the extent of $20,000 or $30,000, desired to increase its line of credit to $50,000 and it, therefore, through Manual Moran, its president, entered into negotiations with the Exchange National Bank with that object in view. The bank, through one of its officers, advised Moran that the petitioner needed more money in its capital account and pointed out to him the danger of undercapitalization and overextension of credit. The bank, however, offered to loan the petitioner $50,000 if Moran would endorse the notes. Moran objected to endorsing to the full amount of $50,000, stating that he owned only one-fourth of the petitioner's capital stock and had no greater voice in its management than any of the other stockholders. A few days later Moran submitted to the bank the following proposition: That the four stockholders of the petitioner would each subscribe to additional capital stock and give their personal notes in payment therefor, and that the corporation would deposit these notes in the bank in addition to a certain amount of bills receivable which were already on deposit, to secure a line of credit in the amount of $50,000. The bank accepted this proposition.

On June 28, 1920, at a special meeting of the petitioner's board of directors, all the directors being present, the following resolution was adopted:

\*　　\*　　\*　　\*　　\*　　\*　　\*

The President stated that the business of the company had grown to such proportions that additional capital would be required to successfully operate it,

and that at a stockholders' meeting held on this date a resolution had been passed increasing the authorized capital stock of the company to $100,000, and that as soon as a return of the President of the company could be transmitted by mail to the Secretary of State, the said increase would be authorized. The President further stated it had been decided that the present stockholders of the company would subscribe for an additional $50,000, of stock and pay for the same with their notes, payable to the order of the company, said notes to bear interest at the rate of eight per cent per annum, and said notes to be made for periods of ninety days and to be subject to renewal until such time as the stockholders giving them can conveniently pay them, or the company make call for payment, the said notes to be used by the company as a basis of credit at the Exchange National Bank for securing funds to meet the requirements of the business.

The President further stated that he had entered into an arrangement with the Exchange National Bank, whereby it had been agreed that the company would keep in the hands of the bank an average of at least Thirty Thousand ($30,000.) Dollars of customers' notes, secured by retained titles on automobiles sold by the company, and whereby the notes to be given by the individual stockholders in the purchase of said additional Fifty-Thousand ($50,000.) Dollars of stock are to be endorsed by the company and delivered to the bank, and the individual stockholders will also endorse in blank and deliver to the bank the certificates of stock received by them in consideration of said notes, under a collateral trust agreement, in consideration whereof the bank would extend to the company a line of credit upon its paper of Fifty Thousand ($50,000.) Dollars.

The arrangement so made by the President was fully discussed, and on motion duly made, seconded and carried was approved and the President was authorized to execute and deliver to the Exchange National Bank such form of collateral trust agreement as may be acceptable to the bank for the purpose of carrying out the said arrangement. Thereupon it was ordered that certificates of stock be issued to stockholders of the company as follows:

> To Manuel Moran_____ 125 shares.
> To Ramon Moran_____ 125 shares.
> To W. C. Moore_____ 125 shares.
> To John T. Moore_____ 125 shares.

upon delivery by said stockholders to the Treasurer of the company of their promissory notes amounting to the par value of said shares payable with eight per cent interest, as provided in the foregoing statement of the President.

It was further ordered that as soon as a new stock book can be obtained, certificates be issued to the present stockholders of the company in exchange, at par for the present outstanding stock.

\* \* \* \* \* \* \*

On July 1, 1921, the petitioner, pursuant to the resolution adopted by its board of directors on June 28, 1920, issued additional capital stock to Manuel Moran, Ramon Moran, W. C. Moore, and John T. Moore in the amount of 125 shares each, and each of them executed and delivered to the petitioner his promissory note for $12,500, with interest at the rate of 8 per cent. These notes were deposited by the petitioner with the bank as collateral for a loan of $50,000, which was given it. The stockholders also deposited the stock mentioned as part of the collateral for the loan.

About 1922 the four stockholders sold the additional stock of the petitioner which they had purchased on July 1, 1920, and at that time the notes were paid in full.

In its income and profits-tax return for the year 1920 the petitioner included the notes mentioned in invested capital at $50,000 from July 1, to December 31, of that year. Upon audit of the return the notes were excluded by the respondent.

The notes in question were bona fide paid in for shares of the petitioner's capital stock and were worth their face value, and the petitioner is entitled to include the full amount thereof in its invested capital from and after July 1, 1920. *Hewitt Rubber Co.*, 1 B. T. A. 424; *American Steel Co.*, 1 B. T. A. 839.

*Judgment will be entered under Rule 50.*